## SUPREME COURT—IN EQUITY.

---

MARY ABBY BURBANK, FOR SELF AND AS GUARDIAN *ad litem, vs.* R. W. WOOD.

THE ancestor agreed to pay a certain stipulated sum for one-half of the estate, and take upon himself its sole management for the term of five years, without remuneration, one-half of the net annual proceeds of the estate to be applied in payment of the purchase money and interest, but died after the original term had expired, without having been able to liquidate the agreed price for his moiety : Held, that it was an entire contract, and must be fulfilled before any advantage could be claimed under it by the heir, and consequently that no proportionate part of the estate could be conveyed to the heir, as for a fulfillment *pro tanto*, arising from labor performed by the ancestor or partial payments made.

The opportunity of paying the amount due on the original contract was afforded the complainant, in order that she might avail herself of the benefit to be derived from it.

There are rights of moral or imperfect obligation appealing to the sense of justice of the party, but which, under certain circumstances, can not be enforced at law or equity.

ALLEN, C. J.

This is a bill in equity, in which the complainant, the widow of Samuel Burbank, and as guardian *ad litem* of his children, minors, alleges that Samuel Burbank entered into an agreement with the respondent, dated May 15, 1851, for the purchase of one-half of the Koloa Plantation, with all the personal property on the estate required in the cultivation of cane or the manufacture of sugar, for the sum of twenty-five thousand dollars,

with interest after one year, and in which he stipulated to take the sole management of the property for the term of five years, for the mutual benefit of the parties, but without charge, and that one-half of the net annual proceeds should be applied, until the amount due for principal and interest of the said purchase is paid. It appears further, by the contract, that the respondent agreed to furnish the money and goods which might be necessary to carry on the estate, charging the usual interest, and to make sale of all products of the plantation, and to do all other business requisite for the same, so far as he was able, at Honolulu, without commissions.

It was further mutually agreed that neither party should sell his interest unless with the consent of the other, for the term of five years.

It is further alleged, that in pursuance of this agreement, the said Burbank entered into the possession of the plantation and labored faithfully for the term of five years, but that during this time it was thought advisable by the parties to devote a large amount of time, capital and labor to the drainage of marsh land, and to certain permanent improvements and additions, which could not be remunerative within the term of the contract, but were thought advisable, as the plantation without them and carried on as before, would prove unproductive. It is further charged, that on the settlement of their accounts, it was agreed that the price of the plantation should be $40,000 instead of the sum originally stipulated, and that in consequence of the failure of the crops and the considerations before set forth, it was agreed that interest neither on the principal nor advances should be paid. It is further charged, that said Burbank paid during his life $3,228 50 ; that the original contract expired May 15th, 1856, but that he continued to superintend the estate till the day of his death, which was on the 10th of May, 1857. It is further charged that a tract of land called Paa was purchased for $2,000 during the term of the contract. And it is further charged, that by mutual agreement, made and entered into by the parties, during the period of Burbank's occupancy of the premises, he was to have a deed of one-half of the plantation, after the coming in of the crop growing at the time of his decease.

And the complainant further alleges, that after the death of her husband the respondent often consulted her in relation to the sale of the estate, advising against it, saying that it would be a good property for her children, and treating her in all respects as a co-partner, saying that she and her children had as much right in the estate as any one ; that she and her children should have a portion of it; that she had no reason to be disturbed about the future, as she had ample means of support.

The complainant further says that she resided on the estate with her children till October, 1860, as she had good right to do, and that during this period she received from the plantation $1,826 62, or thereabouts ; and the complainant further avers that she is informed, and believes, that the respondent has more than once admitted, since the death of her husband, that his heirs were justly entitled to a portion of the plantation, at one time one-third, and at another time one-fourth. The complainant further avers that she has made efforts for a settlement, without success, and that the respondent refuses to do aught in the premises.

The prayer of the complainant is, that the respondent may be decreed to deed to the heirs of said Burbank such proportion of the estate as they were entitled to on the 10th of May, 1857, and to account for the proceeds of the plantation from that date, and also to render an account from May 15th, 1851, to May 10, 1857 ; and that the complainant may have a just equivalent for the labor performed by said Burbank, and for the money advanced by him.

The respondent admits the contract, and that in pursuance thereof Burbank took up his residence and labored on the plantation for five years, but denies that the expenditure of draining the marsh land was at his instance, but that of the said Burbank, although it had been a subject of conversation between them. He further answers and says, that although the said Burbank usually consulted the respondent upon all matters of improvement of the plantation and outlays of money beyond the current expenses, still he was allowed paramount control, agreeably to the agreement or contract aforesaid.

The respondent denies that at the time the said Burbank assumed control as resident manager, that the draining was under-

taken because the plantation was likely to prove unproductive, but avers that the crop under cultivation at the time was the largest and most profitable of any during his management. The said Burbank, however, was always confident of profitable results from the swamp land, and believed this would enable him to pay the amount due by him on his contract for the purchase—that he planted on said marsh about eighty acres of cane before it was fully drained, and that although the respondent expressed his doubts about the result, the said Burbank continued sanguine of large returns till within about three months of his decease, when a considerable portion of the cane growing thereon was blighted. The respondent further says that it was not understood or agreed that the plantation should be valued on settlement at $40,000 instead of $50,000, but that he did say to him, that perhaps at the time of making the contract, the plantation was valued too high, and suggested a willingness to reduce it to $40,000 ; but that said Burbank replied " he would have no more gratuities, he preferred to work it out and see the result ; " and that the subject was never reverted to again. Said respondent denies that he ever intimated to said Burbank, or any other person, during his lifetime, that it was his purpose not to charge interest on the advances or on the contract, and avers that he has no recollection of ever having had any conversation on the subject, but avers that if there is in existence any written memorandum from which it can be inferred that it was ever the purpose of this defendant to give to the heirs of the said Burbank the advantage of the proportion made by this defendant to the said Burbank, to reduce the estimated value of the plantation to $40,000, which the said Burbank refused to accept during his lifetime, and to forego and relinquish the claim to interest on the advances made by him, and on the stipulated price agreed upon by the parties to the said agreement, it is only a copy surreptitiously obtained, of a private memorandum made by this defendant soon after the decease of the said Burbank, to guide his solicitor in preparing the will of this defendant, and which was not intended to be a memorandum of an acknowledgment of any legal or equitable obligation on the part of this defendant to change in any manner the terms or cancel the said outstanding contract.

The respondent further answers, that the charge of $3,228 50, paid by the said Burbank for the benefit of the estate, he had regarded as settled by the charge of the current expenses of his family for the term of five years and three months, during the time the said Burbank had charge of the plantation, but if that credit is given as now claimed, he insists that the current personal expenses of herself and family should be charged.

The respondent further answers and says, that at the time the contract was made the plantation was a leasehold, and both parties regarded it for their interest to obtain the title in fee simple, which they did for a portion of the plantation, for the payment of $3,004, and he asserts that this was done by mutual accord, and that it was for the benefit of all parties. The respondent denies that said Burbank was to have a deed of half of the plantation after the coming in of the crop growing at the time of the decease of the said Burbank, and that at no time within the recollection of the respondent did said Burbank ever intimate a wish to change the original contract.

And this defendant further answering, denies positively that he ever consulted the said Mary A. Burbank in reference to the sale of the Koloa Plantation, or in reference to his business connection with the plantation, but on the contrary, avers that previous to this defendant's visit to the United States, in the years 1859 and 1860, the said Mary A. Burbank never, by word or deed, awakened in the mind of this defendant a suspicion that she believed that she or her children had any valuable claim to or interest in the Koloa plantation, but on the contrary impressed this defendant with the belief that she was suffering under a painful sense of destitution and dependence upon this defendant, from which this defendant did endeavor to relieve her by the declaration that she had no occasion for solicitude in regard to her support, but that he never (even during the time that he regarded her as worthy of careful consideration, from her depressed state of mind) so far avoided the truth as to say that she had ample means for her support in her own right, or words to that effect.

The respondent further says, that he positively denies that he ever used the expression attributed to him, intending thereby to admit that the said Mary A. Burbank, or her children,

were either equitably or justly entitled to any portion or part of the plantation, but on the contrary avers the truth to be, that although it was the purpose of this defendant to make the said Mary A. Burbank believe she was welcome to a home in his family, and that her children should be properly cared for, and that she had no occasion to be disturbed about the future, he studiously avoided communicating her circumstances to her, for the reasons above stated, and that she might not feel embarrassed in accepting and receiving the hospitalities extended to her and her children. .

And this defendant, further answering, positively denies that he has on more than one occasion, subsequent to the decease of the said Burbank, or in a single instance admitted that the heirs of the said Burbank were legally or equitably entitled to a portion of the Koloa plantation, at one time one-third and at another one-quarter, but admits that it has been his purpose to protect the family of his late brother-in-law, Samuel Burbank, deceased, against the contingency of their being thrown upon public charity in a foreign country, in the. event of this defendant's decease, and this defendant has been informed and believes, that a memorandum prepared by him to guide the solicitor of this defendant in preparing his last will and testament, has been surreptitiously seen, and a copy of the same obtained by the said Mary A. Burbank, and that he has good reason to believe that it was from that source alone that she obtained all the information that she possesses in relation to this defendant having admitted, in any form or shape, that the heirs of the said Samuel Burbank were entitled to receive, as an act of justice, any portion or interest in the Koloa plantation. He further says, that in a conversation with a personal friend of said Burbank, soon after his decease, he did say that he hoped the enterprise would not turn out an entire failure, and that although at the time he did not know how the estate would turn out, he hoped they would have something left, perhaps one-quarter, although he did not intend this as an acknowledgment of any legal or equitable interest.

The respondent further answers and says that the original contract is now outstanding, uncancelled and operative, and that there was due him from said Burbank at the time of his

decease, on the purchase and for his portion of the advances, the sum of $47,611 44.

And this defendant, further answering, avers that he has been informed and believes that the estate of the said Burbank is largely insolvent, and that the administrator, or the heirs of the said Burbank, are entirely without the ability to pay this defendant the amount due to him, as above stated, and that the one-half of the Koloa plantation, at the time of the decease of the said Burbank, was not worth, and could not have been sold for the amount due this defendant, and that therefore, being in possession of the same, he has retained it, and managed and controlled it for his own benefit and profit, as he had a good right to do, and that he is not required to account for the management and products of the plantation since that period, but that he is ready and willing to do so if the complainants in this suit are ready and willing to allow this defendant interest on the amount justly due, on the decease of the said Burbank, from his estate, and are ready and willing to cancel and pay the balance that may be found due to this defendant for the price of one-half of the Koloa plantation and advances made on that account, and also to convey the one-half of the estate as it now stands, upon the receipt of such balance, after the same is adjusted, to the heirs of the said Burbank and their heirs and assigns, in accordance with the terms of the original contract. And the respondent further says that if the complainant declines to fulfill the contract as tendered in his answer, the same should be cancelled, and therefore the defendant humbly prays that unless the amount justly due on said contract is paid to him by the heirs of the said Burbank, that a decree may be entered, ordering the said heirs, by their guardian *ad litem*, to cancel said contract.

By the principles of law and equity, contracts must be fulfilled before the benefit resulting therefrom can be enjoyed. If the ancestor failed to fulfill his obligations, his heirs cannot reasonably expect the advantage of it until they fulfill it. It is not pretended that the contract is fulfilled, but it is contended in the first place, that the plantation was improved and enlarged during the time that the ancestor had the charge of it, and that it derived advantages from his labor ; that therefore it was a

fulfillment *pro tanto*, and that a proportionate part of the estate should be conveyed to the heirs.

The authorities do not support this position. Neither law nor equity make a subdivision of a contract of this character. It is one and entire. It is a fulfillment or non-fulfillment.⁻ If, for example, a contract is made for the purchase of a house for a certain sum, to be paid at several stated periods, and there should be a failure in the payment of a portion of the amount, it will not be contended that a Court of Equity can make a new contract, and order the conveyance of a portion of the property, according to the amount paid. Courts have power to enforce contracts, not to make them. The counsel contends that the ancestor had an interest in the plantation, and that it was in the nature of a mortgage. It is true he had an interest—what may be termed an inchoate interest—an interest begun but not perfected; and it is so far analogous to a mortgage, that in order to compel the respondent to convey one-half of the estate, as expressed in the contract, the entire conditions must be complied with. A part payment of a debt, secured by mortgage, does not prevent a foreclosure of the entire estate. It must be a payment of the whole amount due.

Justice Story, in his Treatise on Contracts, says : " An entire contract is a contract the consideration of which is entire on both sides. The entire fulfillment of the promise by either, is a condition precedent to the fulfillment of any part of the promise by the other. Whenever, therefore, there is a contract to pay a gross sum, for a certain and definite consideration, the contract is entire, and is not apportionable either at law or equity. The principle upon which this rule is founded, seems to be that as the contract is founded upon a consideration dependent upon the entire performance thereof, if from any cause it be not wholly performed, the *casus fœderis* does not arise, and the law will not make provision for exigencies against which the parties have neglected to fortify themselves. In such cases it is wholly immaterial whether the exact and complete performance of the whole contract be rendered impossible by overwhelming necessity, or be occasioned by the negligence of the party. If the contract be not completely executed, no action for the consideration can be maintained. Nor is this doctrine

Mary Abby Burbank *vs.* R. W. Wood.

confined to the common law, for Courts of Equity have universally adopted the same rule, except in some few cases in which there were peculiarly equitable circumstances, and which were founded in fraud, or surprise, or mistake.

"Again, where the condition is precedent, it must be strictly performed in every particular, in order to entitle the party whose duty it is to perform it to enforce the contract against the other party."

There can be no doubt of the intention of the parties, viz : A sale and purchase of one-half of the plantation, with certain personal property. There was no intention of a sale and purchase of any other portion in any event. Had it been so, there would have been this stipulation : That if the one-half was not paid for, the respondent should convey such a proportion as was paid for. This is making new terms and conditions, which neither party contemplated; and although in cases of this character, the party who has paid a portion may have incurred a loss, the party to whom the full amount of the purchase money was due may have suffered more from a non-fulfillment. Contracts must be enforced according to the clear intent and meaning of the parties, and in this case there can be no question, for the terms are clear and explicit. It is not a contract which can be apportioned. "When parties enter into a contract, by which the amount to be performed by the one, and the consideration to be paid by the other, are made certain and fixed, such a contract cannot be apportioned ; for in such cases no part of the consideration can be recovered in an action on the contract, until the whole for which the consideration was to be paid is performed." (2 Parson's on Contracts, 32, 35.)

It is contended that the contract was oppressive, from the fact that the labor of the party on the plantation was in offset to the furnishing money and supplies necessary to carry on the estate, and the value of the services of making the purchases for the plantation and sales of its products ; but this is not apparent on its face, and no evidence has been adduced to prove that the value of the services were so unequal as to justify the interference of the Court. It appears that the contract was made openly and fairly, and with the entire understanding of both parties. Whether it was a wise and judicious contract, is

not for the Court to say; but it is not pretended that it was tinctured with fraud. It doubtless appeared, at the time, that there were advantages in the contract, especially for one without means, for if the result had been as the anticipations were at the time it was made, the contract would have been profitable, and a handsome and independent estate would have been acquired for the five years services.

Courts have powers to enforce contracts, not to make them. These principles, as recognized by Courts of Equity, are clear and undeniable, and commend themselves to the judgment of men. If advantages have accrued to one party by the labor and exertions of the other, and there is inability on the part of the heirs to fulfill the contract, it is a matter in *foro conscientae.* In all this class of cases, the party may well reflect upon the Roman proverb—*Res vertitur in meo foro*—" The matter is pending in my own Court." It is claimed that there was a modification of the contract that the price of the estate should be reduced from $50,000 to $40,000, and without interest; but this is denied; and there is no evidence bearing on this question save and excepting in the answer and in the private memorandum referred to therein—the first of which says that the respondent offered this reduction of the amount of the principal, but which was repudiated by the ancestor himself, for by the answer it appears that the respondent did express a willingness to the ancestor to reduce the price of the estate from $50,000 to $40,000, and that he replied—" No ; I will have no more gratuities ; I will work it out ; we will see how it will come out." And the respondent says the subject was never referred to again. Still, by the private memorandum referred to, made subsequent to the death of the ancestor, the respondent says, " that in consideration of disappointment of crops, I passed my word to Mr. Burbank that the valuation of the plantation at the time of the purchase should be taken at $40,000, instead of $50,000, of which promise this is the only record." This conveys the idea that the respondent intended to put on record the promise made to Mr. Burbank, so that, in any event, a settlement should be made on that basis, so that if the heirs complied with the terms of the contract, they should have the benefit of this mod-

ification; but there is no evidence of any promise to remit the interest or reduce its rate on the principal.

It is further contended that, by the same private memorandum, found with respondent's papers, there is an acknowledgment of a quarter interest of the estate belonging to the heirs, which the Court should regard as obligatory on him, and that the benefit should accrue to them. The counsel contends that the paper found in the respondent's secretary admits a consideration and an equity. The respondent says it was a memorandum drawn by him to guide his solicitor in drafting his will, and for the reason that he thought it proper that it should appear in the will why he made such a disposition of his property to those not connected with him by ties of consanguinity; but it is contended that it could not have been made with this intention, for its language admits of no such interpretation. But the answer gives this interpretation; and even if it did not, the question would arise whether it would be enforced in a Court of Law and Equity. It is not a promise to the parties to make a conveyance of a fourth part of the plantation, or the record of a promise, as in the case of reduction of the price; and while it was at the time an expression of his own sense of justice, yet it was a matter purely within his own discretion—a mere acknowledgment of benefits derived from a partial fulfillment of a contract, but it creates no legal liability. As before stated, to give a party the benefit of his contract, he must fulfill on his part. It is not contended that the ancestor did comply with the contract, neither have his heirs, so that unless it has been so waived, and such new conditions recognized as to afford grounds for enforcing it in part, the right of the parties must rest on the original agreement. Contracts partially fulfilled by one party may be productive of advantage to the other, and yet cannot be enforced at law or equity, for the principles which govern both tribunals demand the entire fulfillment of the contract before it can be enforced. In this case, as I understand the answer, the respondent is willing to regard the contract as still subsisting, and that the account may be made up of the amount due upon it, deducting the net proceeds of the plantation, and on payment of the amount due him, he will convey the half interest to the heirs. Legally, the contract terminated at

the death of the ancestor, unless continued by agreement or the acts of the parties. It is not necessary now to inquire whether the contract did subsist under the circumstances of the case, till the complainant filed this bill, which I am inclined to think would be the legal operation; still, as this is acquiesced in, it is unnecessary to discuss it. But it is contended that as the respondent has acknowledged that the heirs would be entitled to one-quarter by the private memorandum before referred to, would it be obligatory on the party in law or equity? The partial fulfillment of a contract may be of advantage to a party, and so acknowledged by him to be, but it does not lay the foundation of a suit either in law or equity. In all such cases it is a matter in *foro conscientœ* of the party himself. But in this case, the respondent says that it was a memorandum made for his solicitor to guide him in making his will; if so, it was an acknowledgment that he thought it equitable to devise such a portion of the estate to the heirs of the party, but it would not certainly lay the foundation for a suit, although it would be an acknowledgment that he thought it equitable that he should devise to the heirs a quarter of the estate, to be enjoyed after his death. If the respondent was not under obligation, either by the principles of law or equity, to make this conveyance of quarter of the estate to the heirs at that time, it amounted merely to this: That he would make a present to the heirs, induced to do so by the advantages derived from their ancestor, in his management of the estate. Courts of equity are governed by principles of law; and there are many cases where they cannot give relief, which would have merits in *foro conscientœ*, whether this is within that class, it is not within the province of the Court to decide. It can only be submitted to the conscience of the respondent. There are rights of moral obligation which the laws do not enforce, and are left to the sense of justice of the party, and they are deemed rights of imperfect obligation. In this point of view, it is a matter which must be left to the conscience of the individual to pass judgment upon the advantages resulting from the management of the estate by the ancestor. A party may acknowledge that he has derived advantages from the partial fulfillment of a contract, but he does not thereby incur a legal obligation to pay for those ad-

vantages, or to so far modify the contract as to give the party the benefit of a partial fulfillment and waive a portion of his rights. It may be generous to do so, and in some cases it may be just ; but it is a matter appealing to the sense of justice of the party and not to the principles which govern Courts of law and equity.

Want of success in an enterprise works injury to all parties. In the first place, it has been so to the respondent, for he not only has not received the amount due him on the contract, but he has not derived any material benefit from the annual income of the property, as it has been principally expended in carrying on the estate. Money was expended, to some extent by mutual accord, for improvements and for additions to the estate. It is unfortunate for the heirs also, as the receipts were not equal to the anticipations of the parties, and the debt contracted was not paid as expected. But whose fault was it ? It may be regarded as the fault of neither, but the misfortune of both. The money expended on the swamp lands was a decided loss. The other expenditures, made for permanent improvements, and for the purpose of additional land for cane, was an advantage. It was optional for the ancestor to acquiesce in the purchase of lands. He was under no obligations to embark in new experiments or improvements not necessary to carry out the regular business of the plantation, but having done so, it was necessarily so much draft on the ordinary income of the plantation, and it limited his means to make payments on his contract. They were no doubt considered excellent investments at the time, but the results show, that in the swamp land especially, that the parties misjudged as to the profit to be derived.

It is further contended, that the parties to the contract were partners, and that the survivor had failed to administer on the estate, and being thereby in his own wrong, had incurred certain liabilities to the heirs. That they were partners in the business appertaining to the plantation is true, and the respondent was liable for all the debts against the partnership, whether there was an administration or not. If the debts of the partnership are paid, there is no wrong or injury. The principle to which the counsel refers is where there is an interference with the property without legal authority. Partners

are liable in any event. But in this case there is no reason for the heirs to complain, but, on the contrary, the respondent has carried on the estate in a manner not complained of, and the Court now give them, agreeably to the terms of the answer, the opportunity of paying the amount due on the original contract, having all the advantages of profits which may have arisen from the business of the estate. Either party could have petitioned the Court for aid to settle the matters between them at an earlier day, but as they have not, the Court regard it as just that the accounts should be made as agreeably to this principle. There is justice in this view of the case, because the ancestor continued to manage the estate subsequently to the expiration of the contract, and until the time of his death; and further, the widow continued to reside upon it for some years after, with the expectation perhaps that the income of the property would so far liquidate the liabilities that the respondent would convey to the heirs an interest in the plantation. As the complainant or the heirs could not be expected to know the state of the accounts until perhaps there was an adjudication in a Court of Chancery, it is right, even now, although at a late period, that they should have the right, after an account stated, to comply with the contract, and take a conveyance accordingly.

It is contended further, that it is not equitable that the heirs should be required, in the first place, to pay the balance of what is due on the contract, because they ought to have the benefit of the accruing interest, and because they were not in the wrong. It is very true that they were not in the wrong for the non-fulfillment of the contract. It must be regarded as a misfortune; nevertheless it is true that the contract has not been fulfilled, unless the amount due on either the original or modified contract has been paid. There are many contracts which are not fulfilled, and which arise from the misfortune of the party; but it is a new doctrine that on that account he is entitled in a Court of Law and Equity to a compliance of the contract in whole or in part by the other party. This would open a wide field of legal discretion, and give to Courts a greater control over the rights of parties than any authorities authorize. Courts must give construction to contracts, and not adjudge whether parties were wise in making

them, or whether they have been judicious or unfortunate in fulfilling them. As to the accruing interest, under the view which the Court take of the case, and which is in accordance with that of the respondent, as expressed in the answer, the heirs will have all the advantages of any profit which may have arisen from the estate, they paying any balance which may be due on the contract after deducting the net proceeds of the plantation. The counsel has, as I think, in some degree misapprehended the equities of this case, and it may be worth while briefly to review the transaction. The respondent was the owner of a plantation, regarded at the time as profitable and of great value, and he makes a contract of sale with the ancestor for half part. No payment is made, and none is required, for the term of five years, except from the net proceeds of the estate. At the time one was wealthy and the other had small means. The labor of the one on the plantation was offset to that of the other at the market where the supplies were obtained, and where the products were sold. All that the plantation required was supplied by the respondent, charging the usual rate of interest. He was never embarrassed for means. He had every facility, so that he might take the advantage of every improvement. Purchases of property were made, which were undoubtedly advantageous to the estate, and nothing was lost for the want of capital. Still the estate was not as profitable as was anticipated, not from the neglect, or by acts of the respondent, for that the ancestor had the principal control and direction, is apparent from the testimony. The sad calamity of the death of the husband of the complainant and father of the heirs, puts an end to his labors, and the estate reverts to the respondent's superintendence, who has conducted it ever since judiciously, so far as appears. And now the respondent expresses his willingness that the contract should be considered as subsisting, and that the heirs should have all the advantages accruing under it to the present time.

It is a misfortune that the ancestor did not live to have fulfilled the contract, and to have had the entire benefit of his labor, but now the heirs can have all the benefit arising from his labors, if they are able to fulfill the contract.

As the case is presented by the bill, answer and proofs, I am

of opinion that, on the 10th day of May, 1857, the heirs of the ancestor were not entitled to a conveyance of any portion of the estate, because, from the accounts rendered, which are not contested, the contract, as modified, was not fulfilled, and therefore they are not entitled to an account of the proceeds from that date, as prayed for. And, therefore, the bill must be dismissed, unless to avoid expense, the complainant should move to amend the bill, praying for an account of the proceeds of the plantation to the time of filing the bill, or, perhaps, to the present time, in order that the amount on the contract may be ascertained, so that for whatever balance there may be, payment may be made, and the contract executed, whereupon a conveyance of one-half of the estate would be ordered.

Mr. Harris for complainant.

Mr. Bates for respondent.